## MYERS v. MYERS.

No. 3975.   Decided August 16, 1923.   (218 Pac. 123.)

1. DIVORCE—ACCEPTANCE OF SERVICE IN ANOTHER STATE AND TAKING OF TIME TO PLEAD HELD AN "APPEARANCE" GIVING JURISDICTION. Where defendant, in a divorce action, accepted service of summons in another state by indorsing his acceptance at the bottom of the summons, in which indorsement was included a statement that he took "30 days from this date to answer or otherwise plead to the complaint filed herein," *held* that, though mere acceptance of service was insufficient to give the court jurisdiction to enter a personal judgment for alimony, the asking for or taking time to plead constituted an appearance sufficient to give the court jurisdiction.

2. DIVORCE—REMARRIAGE DOES NOT AUTOMATICALLY TERMINATE JUDGMENT FOR ALIMONY. A remarriage does not automatically terminate judgment for alimony.

3. DIVORCE—COURT MAY MODIFY DECREE BY REDUCING OR INCREASING ALIMONY. Under Comp. Laws 1917, § 3000, relating to the disposition of children and property in divorce actions, the court has jurisdiction to modify the decree by reducing or increasing alimony subsequently to the fixing of the amount designated in the original decree.[1]

4. DIVORCE—COURT MAY NOT MODIFY JUDGMENT FOR ALIMONY PAYABLE IN INSTALLMENTS AS TO INSTALLMENTS PAST DUE. Under Comp. Laws 1917, § 3000, relating to the disposition of children and property in divorce proceedings, the court has no power

---

[1] *Whitmore* v. *Hardin*, 3 Utah, 121, 1 Pac. 465; *Read* v. *Read*, 28 Utah, 297, 78 Pac. 677; *Buzzo* v. *Buzzo*, 45 Utah, 625, 148 Pac. 362.

to change or modify a judgment for alimony payable in periodical installments after the date when such installments become due.[2]

Appeal from District Court, Second District, Weber County; *J. N. Kimball,* Judge.

Action for divorce by Isabella Myers against J. William Myers. On order to show cause why defendant should not be punished for failure to make payments on account of alimony. From judgment plaintiff appeals, and defendant cross-appeals.

AFFIRMED on cross-appeal, ANNULLED and REMANDED for further proceedings on direct appeal.

*C. R. Hollingsworth,* of Ogden, for appellant.

*Stuart P. Dobbs,* of Ogden, for respondent.

GIDEON, J.

On June 24, 1919, the district court of Weber county entered its decree in an action therein pending, wherein Isabella Myers (appellant here) was plaintiff, and J. William Myers (respondent and cross-appellant) was defendant, dissolving the bonds of matrimony existing between the parties and awarding the plaintiff the care and custody of the minor child, also giving plaintiff permanent alimony in the sum of $25 per month. No part of the alimony was paid. On or about March 23, 1923, the court made its order, based upon an affidavit filed by the plaintiff, directing the defendant to appear on April 2, 1923, and show cause why he should not be punished for failure to make payment on account of alimony as provided in the decree of June 24, 1919. In answer to that order, defendant appeared specially, and by motion challenged the right of the court to require the defendant to

[2] *Hunt* v. *Monroe,* 32 Utah, 428, 91 Pac. 269, 11 L. R. A. (N. S.) 249.

pay alimony. The objection was that the court never had jurisdiction to render a personal judgment for alimony. The motion was supported by an affidavit on behalf of defendant, in which it is made to appear that service of the summons in the divorce action was accepted in the state of Oregon. The claim of the plaintiff for an order requiring the defendant to pay alimony, and the defense interposed by defendant's motion, were submitted to the court with the record in the case. It does not appear that any testimony was taken. Findings were made by the court, and an order made denying defendant's objections to the jurisdiction of the court to enter a personal judgment for alimony. The court concluded that there was due and unpaid from defendant to plaintiff $55, "for alimony at the rate of $25 per month from June 24, 1919, to September 1, 1919." Among the court's findings is one to the effect that plaintiff married one William A. Nelson, September 1, 1919, in the state of Wyoming, "three months and 24 days before the expiration of six months after entry of the divorce decree, and ever since has lived and is now living with him in the relation of wife."

The decree of divorce, in conformity with our statute, provided that it should not become absolute until after six months from the date of entry. The question presented by appellant is the alleged error of the court in holding that the marriage automatically terminated the decree for permanent alimony. The question presented by cross-appellant is that the court erred in holding that it had jurisdiction under the original divorce proceedings to enter a judgment requiring defendant to pay alimony.

We shall consider first the question presented by the cross-appeal.

The defendant's affidavit that he accepted service in the state of Oregon is not disputed. The court found that to be the fact. It seems that the summons was mailed to defendant by plaintiff's attorney. There was indorsed on the bottom of the summons the following:

"Comes now the above-named defendant, J. William Myers, in his own proper person, and hereby accepts service of summons in the above-entitled action, and takes thirty days from this date

to answer or otherwise plead to the complaint filed therein.   Dated this 19th day of May, 1919.

"[Signed].                                    J. William Myers."

No order of publication was made.

Cross-appellant contends that the mere acceptance of service of the summons in a state other than the one in which the action is pending is not an appearance in the action.

If the indorsement on the summons contained nothing but the acceptance of service, the contention would have to be upheld.   The cases cited are to that effect.   *Weatherbee* v. *Weatherbee*, 20 Wis. 499; *Bank* v. *Roger*, 12 Minn. 529, Gil. 437.   In addition to accepting service, however, defendant took 30 days from the date of such acceptance to answer or otherwise plead to the complaint.   Asking or taking time to plead to a complaint is generally held to be an appearance in the action, and brings the person of the defendant within the jurisdiction of the court.   2 R. C. L. 329, § 8.   The contention of cross-appellant that the court was without jurisdiction was rightly denied.

In considering the claim of appellant, we express no opinion whether the marriage of plaintiff to William A. Nelson on September 1, 1919, was a valid marriage, and shall determine this case without regard to that question.

The only record before this court, as above stated, is the complaint, summons, findings, conclusions, and judgment in the original action, plaintiff's affidavit of March 23, 1923, the order of the court made on that affidavit, defendant's motion and affidavit in support of the motion, the findings of the court, and its judgment on the motion.   It nowhere appears in any of the affidavits that plaintiff had remarried.   The court, however, so found, and that finding is not challenged.

Appellant's claim of error is that the court was wrong in its conclusion that only the sum of $55 was due upon the judgment for alimony.   It is stated, and is apparent from the oral argument and written briefs of counsel, that the court was of the opinion that the marriage to Nelson terminated, or rendered ineffective, the judgment for alimony.   On that question the authorities are not in harmony.   We are, however, of the opinion that the weight of

authority is to the effect that a remarriage does not automatically terminate the judgment for alimony. 1 R. C. L. 940.

In *McGill* v. *McGill*, 101 Kan. 327, 166 Pac. 503, the Supreme Court of Kansas says:

"Whatever may be thought, or should be thought, about the policy or propriety of requiring a divorced husband to continue payment of alimony to a wife remarried to another man, the authorities are preponderant in support of the doctrine that her marriage does not of itself operate as a release of the obligation, although it may well be a ground of application for discharging the defendant from further payments."

See, also, 14 Cyc. 787; 2 A. & E. Ency. Law (2d Ed.) 138; note 11, Ann. Cas. 523.

It is argued on behalf of cross-appellant that the decree for future alimony under the wording of our statute does not amount to, or constitute what is designated by counsel, a "vested right," the claim being that alimony past due, or in the future, is subject to be defeated by an order of the court entering the decree. Reliance is had upon the opinion of this court in *Hunt* v. *Monroe*, 32 Utah, 428, 91 Pac. 269, 11 L. R. A. (N. S.) 249. In that case, this court held that a judgment of the state of Colorado for alimony, payable monthly, is not such a judgment as requires a sister state to give it full faith and credit under the federal Constitution, "unless and until the court which rendered it, passes upon, and fixes a specific amount due and payable in some proper proceeding in the original action, or by an independent action, if such action can be maintained in the state where the original order or judgment was entered." The court there followed the Supreme Court of the United States in *Lynde* v. *Lynde*, 181 U. S. 183, 21 Sup. Ct. 555, 45 L. Ed. 810, which affirms the judgment of the Court of Appeals of New York as reported in 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332.

The court, in *Hunt* v. *Monroe*, supra, was considering whether a judgment of a court of Colorado for future alimony payable monthly, was entitled to the protection of the full faith and credit clause of the federal Constitution. In that case, the court indulged the presumption that the laws of Colorado were the same as the laws of Utah, in the absence

of any proof as to what the laws of that state were. It is pointed out in *Hunt* v. *Monroe* that by reason of the fact that the Court of Appeals of New York discussed the case of *Barber* v. *Barber*, 21 How. 582, 16 L. Ed. 226, that the effect of the opinion in the Lynde Case was to modify the Barber Case under facts similar to the facts considered by the court in the Lynde Case. The opinion of this court in *Hunt* v. *Monroe* was announced in 1907. Subsequent to that date, in 1910, the Supreme Court of the United States, in an elaborate opinion (*Sistare* v. *Sistare*, 218 U. S. 16, 30 Sup. Ct. 682, 54 L. Ed. 905, 28 L. R. A. [N. S.] 1068, 20 Ann. Cas. 1061), adhered to the ruling in *Barber* v. *Barber* and differentiated the Lynde and Barber Cases, and in effect holds that the two cases considered together are not necessarily in conflict, ''and in any event, if there be, that *Lynde* v. *Lynde* must be restricted or qualified so as to cause it not to overrule the decision in the Barber Case.''

In the course of the opinion in *Sistare* v. *Sistare*, it is said:

"And, answering that question, not only by the light of reason, but by the authoritative force of the ruling in the Barber Case, which had prevailed for so many years, and by the reasoning expressed in the Lynde Case we think the conclusion is inevitable that the Lynde Case cannot be held to have overruled the Barber Case, and therefore that the two cases must be interpreted in harmony, one with the other, and that on so doing it results: First, that, generally speaking, where a decree is rendered for alimony and is made payable in future installments, the right to such installments becomes absolute and vested upon becoming due, and is therefore protected by the full faith and credit clause, provided no modification of the decree has been made prior to the maturity of the installments, since, as declared in the Barber Case, 'alimony decreed to a wife in a divorce of separation from bed and board is as much a debt of record, until the decree has been recalled, as any other judgment for money is.' Second, that this general rule, however, does not obtain where, by the law of the state in which a judgment for future alimony is rendered, the right to demand and receive such future alimony is discretionary with the court which rendered the decree, to such an extent that no absolute or vested right attaches to receive the installments ordered by the decree to be paid, even although no application to annul or modify the decree in respect to alimony had been made prior to the installments becoming due."

We are therefore brought directly to the question, Does the provision of our Code retain in the court the power to change or modify a judgment for alimony payable in monthly or other periodic installments after the date when such installments become due?

Section 3000, Comp. Laws Utah 1917, relating to disposition of children and property, after providing that the court may make such order in relation to the children, property, parties, and the maintenance of the parties and children as shall be equitable, says:

"Subsequent changes, or new orders, may be made by the court in respect to the disposal of the children, or the distribution of property, as shall be reasonable and proper."

This court has repeatedly held under that provision that the court has jurisdiction to modify the decree by either reducing or increasing alimony subsequent to the fixing of the amount designated in the original decree of divorce. *Whitmore* v. *Hardin,* 3 Utah, 121, 1 Pac. 465; *Read* v. *Read,* 28 Utah, 297, 78 Pac. 677; *Buzzo* v. *Buzzo,* 45 Utah, 625, 148 Pac. 362. None of these cases, however, determine the question presented by this appeal.

In *Sistare* v. *Sistare,* supra, the court considered "the finality of the New York judgment as to past-due installments for future alimony under the law of the state of New York." The provisions of the statute of New York (Code Civ. Proc. § 1771), under which it was contended that the court had authority to modify or amend the judgment of divorce respecting past-due alimony, so far as material, is as follows:

"The court may, by order upon application of either party to the action, after due notice to the other, to be given in such manner as the court shall prescribe, at any time after final judgment, *vary or modify such directions.*" (Italics ours.)

The power granted by the New York statute is fully as broad and comprehensive as is the power granted by our statute. The New York statute seems to not only   3, 4 give the court power to modify, but "to annul." The Supreme Court of the United States, in discussing and construing that statute, says:

"But it is equally certain that nothing in this language ex-

pressly gives power to revoke or modify an installment of alimony which had accrued prior to the making of the application to vary or modify, and every reasonable implication must be resorted to against the existence of such power in the absence of clear language manifesting an intention to confer it."

The judgment appealed from is annulled, and the cause is remanded to the district court of Weber county for further proceedings. Costs awarded to appellant.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

FRICK, J., did not participate.