Francis A. BURTON, and Aline R. Burton, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. C-136-55.

United States District Court
D. Utah, Central Division.

Feb. 17, 1956.

Frank Armstrong (of Thomas & Armstrong), Salt Lake City, Utah, for plaintiffs.

A Pratt Kesler, U. S. Atty. for the Dist. of Utah, Salt Lake City (H. Brian Holland, Asst. U. S. Atty. Gen., Andrew D. Sharpe, Kenneth P. Ray, Attys., Dept. of Justice, Washington, D. C., on the brief), for defendant.

CHRISTENSON, District Judge.

Plaintiffs have sued to recover, with interest, $1,977.97, claimed to have been erroneously assessed and collected against them by the Collector of Internal Revenue as a deficiency in income taxes for 1948–1949. This amount related to payments that Francis A. Burton had made to his former wife under the terms of a modified divorce decree, and for which he had claimed deduction.

At the pre-trial conference it appeared that the determinative facts were not in dispute. Accordingly, an opportunity was afforded for the filing of a motion for summary judgment, which was done by the plaintiff. The Court allowed time for the filing of memoranda on the law by the respective parties. Plaintiffs filed a brief, submitting authorities supporting their contention that on the facts appearing in the record without dispute they were entitled to judgment as a matter of law. The Government then filed an "Objection to Plaintiffs' Motion for Summary Judgment", asserting that from the pleadings and terms of the modified decree in the divorce action between Francis A. Burton and Mildred D. Burton it appeared that the modified decree was prepared and entered in contemplation of the remarriage of Mildred D. Burton; that plaintiff's former wife, the said Mildred D. Burton did, in fact, become remarried during the month of December, 1947, and that in any event, a portion of the moneys provided by the modified decree to be paid to her were for something other than alimony payments, "in that the said modified decree provides for moneys to be paid in a different amount in the event of the remarriage of the divorced wife." The Government also presented a motion for leave to file an amended answer for the purpose of specifically denying that the payments made by Francis A. Burton to his former wife were "alimony" the deduction of which was authorized by law. In support of these objections and motion there was filed an affidavit signed by Mildred D. Smith (formerly Mildred D. Burton) setting out her version of the circumstances leading to the entry of the modified divorce decree. On the basis of this affidavit and in view of the other matters now appearing of record,

the Government has furnished a memorandum of authorities. Plaintiffs' motion for summary judgment and the Government's objections and motion for leave to amend its answer now have been submitted for decision.

It appears without dispute that Mildred D. Burton secured a divorce from Francis A. Burton in the District Court of the Third Judicial District in and for Salt Lake County, State of Utah, on the 8th day of March, 1946. This decree was in the usual form of an interlocutory decree; it awarded support money for the maintenance and care of a minor child of the parties and provided with reference to alimony that plaintiff was awarded judgment against the defendant for periodic payments of alimony of $465 on the first day of March, 1946, and $465 on the first day of each and every month thereafter up to, and including, the first day of September, 1954, and thereafter, $280 on the first day of October, 1954 and $280 on the first day of each and every month thereafter; and it was further provided that said payments for alimony should continue after the death of the defendant and should be a charge upon his estate so long as plaintiff lived and remained unmarried and that upon the plaintiff's death or remarriage, the alimony should terminate. No contention is made by the Government that these payments were not "periodic payments" of alimony properly deductible by Mr. Burton for income tax purposes.

On November 19, 1947, the original decree was modified by the District Court of Salt Lake County by providing as follows:

"1(a). That plaintiff be, and she is hereby, awarded judgment against the defendant for periodic payments of alimony in the amounts and payable as follows: $465.00 on the first day of December, 1946, and $465.00 on the first day of each and every month thereafter up to, and including, the first day of September, 1954, and thereafter $280.00 on the first day of October, 1954,

and $280.00 on the first day of each and every month thereafter until the death of the plaintiff or until her remarriage, if said remarriage occurs on or after the 1st day of September, 1954; and in the event plaintiff remarries prior to September 1st, 1954, defendant shall pay to the plaintiff in lieu of the amounts above provided the sum of $225.00 per month on the first day of each and every month thereafter to, and including the first day of September, 1954, at which time payment on account of alimony shall cease and terminate; and the payments provided for herein shall continue until paid as above set out even though defendant should die prior thereto, and they shall be a charge upon defendant's estate until paid; but upon the death of the plaintiff or upon her remarriage on or after the 1st day of September, 1954, all payments on account of alimony shall cease and terminate."

For the purposes of the pending motions, I will accept as true the circumstances leading up to the entry of the modified decree as set out in the affidavit of Mildred D. Smith submitted by the Government. It accordingly appears that about a month prior to the date of the modified decree, Mildred D. Smith called to see Frank Armstrong, the attorney who represented them at the time of the original divorce. She stated that she didn't consider the divorce decree fair; she reported to Mr. Armstrong that she was dating and that while she didn't plan on getting married, she was thinking about it and if she did marry, she would have to "take a beating financially". She stated that she was still in debt and also paying on her home and wouldn't have that cleared until September, 1954. At that time, Francis A. Burton was in serious condition physically and Mr. Armstrong said he would talk the matter over with him and see if he would consent to a modification. Mrs. Burton told Mr. Armstrong that she wanted the decree changed so that in

the event she remarried, she would continue to receive some alimony until she was out of debt and had the house paid for. A few days later, Mr. Armstrong reported to Mrs. Burton that Mr. Burton had told him to do whatever he thought fair. Mr. Armstrong and Mrs. Burton finally agreed on the amount of alimony to be paid and her divorce decree was thereupon changed as indicated by the modification of decree to which reference already has been made. Mrs. Burton remarried about a month after the decree was changed, or prior to December 31, 1947.

The modified decree was in effect during the years 1948 and 1949. On their income tax returns for these years plaintiffs claimed as deductions the amounts paid to the former Mrs. Burton under the modified decree. The disallowance of these deductions and the assessment and payment of a deficiency based thereon have given rise to this suit for the recovery of the disputed taxes, with interest.

The Government phrases the questions to be decided as (1) whether the Government is entitled to have a trial on the merits "where it is apparent from the pleadings that there is a serious dispute as to the material fact of whether or not the payments in question were actually alimony payments" within the intendment of Section 22(k) and Section 23(u) of the Internal Revenue Code, 1939, 26 U.S.C.A. §§ 22(k), 23(u), and (2) whether the Government is entitled to a trial on the merits in order to introduce evidence and testimony that the modified decree was prepared and entered solely for the purpose of settlement of property rights on the basis of the contemplated marriage by taxpayer's former wife, Mildred D. Burton, thereby providing that the payments made, "allegedly as alimony, were 'installments' payable in less than ten years" and therefore not deductible.

■■ It is not every uncertainty or dispute or every failure of the parties to agree, which precludes the disposition of a case by summary judgment. Where the determinative facts are without dispute or are clearly established by the record so that one of the parties is shown to be entitled to judgment as a matter of law, it is the duty of the Court to grant summary judgment accordingly; this notwithstanding that there may be a dispute as to immaterial points. Fed.Rules Civ.Proc. rule 56, 28 U.S.C.A. General statements or denials in a pleading will not prevent the granting of such judgment on the basis of specific facts appearing in affidavits, depositions, matters of record or similar positive showings. General Beverages, Inc. v. Rogers, 10 Cir., 1954, 216 F.2d 413; Zampos v. United States Smelting, Refining & Mining Co., 10 Cir., 1953, 206 F.2d 171; Avrick v. Rockmont Envelope Co., 10 Cir., 1946, 155 F.2d 568; Schreffler v. Bowles, 10 Cir., 1946, 153 F.2d 1, certiorari denied 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Suckow Borax Mines Consolidated, Inc., v. Borax Consolidated, Ltd., 9 Cir., 185 F.2d 196, certiorari denied 340 U.S. 943, 71 S.Ct. 506, 95 L.Ed. 680.

The affidavit of Mildred D. Smith apparently is the basis both for the Government's request to amend its answer and for its present contention that there are issues of fact on which it is entitled to trial on the merits. This affidavit can be taken as true in the light most favorable to the Government. Still, the facts on which this lawsuit can be determined are before me, and I can see nothing by way of evidence which could be adduced at a trial in support of the allegations of the affidavit which would alter the result. If the Government desired to make a showing beyond these allegations in order to rebut the effect of the modified decree which is before the Court, it has had full opportunity to do so. If we accept the Government's showing at its face value an issue of law is presented. Whether the payments in question were deductible by plaintiffs turns upon the nature of those payments in the light of the terms of the modified decree, the other admissions on file, and

ent explanation:

the affidavit mentioned, and upon the legal application to the facts thus established of Sections 22(k) and 23(u) of the Internal Revenue Code of 1939, 26 U.S.C.A. §§ 22(k) 23(u) the pertinent provisions of which follow:

"22. Gross income

\*  \*  \*  \*  \*  \*

"(k) Alimony, etc., income. In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of \* \* \* a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife \* \* \*. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection \* \* \*.

"23. Deductions from gross income. In computing net income there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*

"(u) Alimony, etc., payments. In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. \* \* \* "

■ The Government desires a trial in order to show that the disputed payments are not "alimony". But to constitute "periodic payments" for the purposes of the statute it is not necessary that payments be for "alimony" in its limited sense. Subsections (k) and (u) employ that term only to indicate the general subject matter, and the expression "etc." immediately following these

references itself indicates that the subject matter is not limited to alimony, strictly speaking. The bodies of the subsections refer not to "alimony" but to "periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of \* \* \* a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree \* \* \*."

The Government's suggestion that it might obtain evidence to show that the payments provided in the modified decree constituted a "property settlement" in contemplation of the remarriage of Mildred D. Burton does not seem significant because whatever they may be called, these payments were to be made at intervals subsequent to the modified decree by reason of the legal obligation of Mr. Burton based upon the marital relationship theretofore existing between the parties.

■ Even though the meaning of the terms as used in the revenue code were as limited as the Government contends, the payments nonetheless would fall within the definition of alimony. There is no reason why alimony cannot be used for the payment of debts or the acquisition of property, as well as for current support, so long as it is based upon the obligation of support arising from the marital relationship. It would seem that such payments are not converted into something else because they may be continued after the wife's remarriage, providing that there is an express order of the court, as in this case, that they are to so continue for a time that may be deemed reasonable under the circumstances in recognition of the former husband's marital obligation. Alimony payable in a lump sum may be conserved and utilized after remarriage and the possibility or probability that it will be does not take away its nature as lump sum alimony; nor should the extension of periodic alimony payments beyond remarriage be deemed to do so. For many years the doctrine was followed in Utah

that even where the decree of divorce was silent as to the continuation of the obligation to pay alimony, remarriage of the recipient did not automatically terminate that obligation. Myers v. Myers, 62 Utah 90, 218 P. 123, 30 A.L.R. 74. In the case of Austad v. Austad, 2 Utah 2d 49, 269 P.2d 284, this doctrine was overruled, but it was indicated in the later decision that the court has power to expressly provide that the obligation to pay alimony shall continue after remarriage in view of the special circumstances of the particular case. This is what the court did in the Burton divorce case by the modified decree.

Thus, from either viewpoint, the payments in question were such as could have been deducted by the husband, providing that they were not rendered "installment payments" within the purview of sub-section (k), supra, on the theory that certainty in amount and certainty of the period over which they were payable by the terms of the decree rendered their total a principal sum "specified" in the modified decree.

▆▆▆ The Government insists that the modified decree was entered in contemplation of Mildred D. Burton's remarriage, and in view of this insistence, argues that the future payments would terminate in all events as of September 1, 1954, and hence, the total sum was computable with certainty as a sum specified in the modified decree. I am persuaded to the contrary. The Government's contention ignores at least the possibility existing at the time of the modification, that the marriage would not take place, whether it was then planned or, as inferable from the affidavit, not then planned. It further ignores the possibility that Mildred D. Burton may have died before September 1, 1954 which by the terms of the modified decree would terminate the obligation to make future payments. These contingencies rendered it impossible to determine in advance with any degree of certainty the total amount to have been paid under the modified decree. There is no indication that the provisions of the modified decree were agreed upon with the tax consequences in mind or that they represented anything other than the good-faith belief by the parties and the Court on what would be proper in view of the former marital relationship under the circumstances then existing.

The Government says "It is significant that no attempt has been made by the Government to assert that the payments prior to January 1, 1948 (i. e., prior to Mildred D. Burton's remarriage) were non-deductible." This seems in the nature of a recognition that the principal sum was not specified at the time of the entry of the modified decree. It is the Government's position that the provision for installment payments came into operation upon Mildred D. Burton's remarriage, which rendered the payments certain. This argument still ignores the contingency of her death. Aside from that, it seems to me that it is looking at the matter from the wrong point of view. Either the principal was specified at the time of the modified decree, or not at all for the purposes of sub-division (k). Hindsight is better than foresight, but we cannot appraise the certainty of payment from a standpoint other than prospectively as of the time of the modification. As of that time there were two contingencies. The fact that one of them was later resolved does not show a specification of a principal sum in the decree.

▆▆ Moreover, contrary to some decisions of the tax court, the uniform view among the circuits seems against the Government on the points in question. There appears to me no reason why the doctrine of these cases in other circuits should not be followed in the absence of any Tenth Circuit or Supreme Court case to the contrary. See Prewett v. Commissioner of Internal Revenue, 8 Cir., 1955, 221 F.2d 250; Myers v. Commissioner of Internal Revenue, 9 Cir., 1954, 212 F.2d 448; Davidson v. Commissioner of Internal Revenue, 9 Cir., 1955, 219 F.2d 147; Smith's Estate v.

**127**

Commissioner of Internal Revenue, 3 Cir., 1953, 208 F.2d 349; Baker v. Commissioner of Internal Revenue, 2 Cir., 1953, 205 F.2d 369.

Defendant's motion for leave to file an amended answer is denied. The new matter sought to be alleged would have no effect upon the result here reached, and it is not supported by the affidavit upon the basis of which the amendment is sought.

Defendant's objections to the granting of summary judgment are overruled.

Plaintiffs' motion for summary judgment is hereby granted and the clerk accordingly is directed to enter judgment in favor of plaintiffs, Francis A. Burton and Aline R. Burton, and against the defendant, United States of America, for the sum of $1,977.97 principal, together with interest at the rate of 6% per annum from the 30th day of March, 1951. No costs are allowed.